**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**BRENDA FAIR**                                                                                         **PLAINTIFF**

**V.**                                              **NO. 1:06CV278-MPM-EMB**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

**MEMORANDUM OPINION**

      Plaintiff, Brenda Fair, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her applications for disability benefits under Title II and Supplemental Security Income ("SSI") benefits under Title XVI. The Court, having duly considered the briefs of the parties, the administrative record and the applicable law, rules as follows.

**Administrative Proceedings**

      Plaintiff filed applications for disability benefits under Title II and Supplemental Security Income (SSI) benefits under Title XVI on August 14, 2003, alleging a disability onset date of February 1, 2003. (Tr. 65-67, 312-14).[1] The applications were denied initially and on reconsideration. (Tr. 23-33, 36-46, 49-52).

      In a hearing decision dated June 27, 2006, an administrative law judge (ALJ) found that Plaintiff was not disabled as defined in the Social Security Act. (Tr. 13-20). The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 25, 2006. (Tr. 5-7). The ALJ's final hearing

---

[1] Plaintiff had previously filed for disability benefits twice and had been denied. (Tr. 69).

decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## Facts

Plaintiff was born November 5, 1960 (Tr. 65) and was 45 years of age at the time of the hearing decision on June 27, 2006. (Tr. 20). She completed the seventh grade and could read and write. (Tr. 323-24). She was five feet and five inches tall and weighed 167 pounds. (Tr. 81). Plaintiff previously worked as a sewing machine operator. (Tr. 19, 109). Plaintiff alleged that she could not work due to neck, back, and shoulder pain and mental impairments. (Tr. 15, 47, 82). However, after a careful review and evaluation of the medical evidence of record, the subjective testimony at the hearing (Tr. 319-38), and the testimony of a vocational expert (Tr. 338-45), the ALJ found Plaintiff not disabled. (Tr. 13-20). Contrary to Plaintiff's allegation of disability, the ALJ found that she had the residual functional capacity ("RFC") to perform a range of light work per Agency regulations. (Tr. 16). Specifically, the ALJ found that Plaintiff could sit for a total of six hours in an eight-hour work day (for four hours at a time), stand/walk for a total of four hours in an eight-hour work day (for one hour at a time), and lift/carry 10 pounds frequently and 20 pounds occasionally. (Tr. 16). The ALJ also found that Plaintiff could occasionally climb stairs, ramps, ropes, scaffolds, and ladders and occasionally balance, stoop, bend, crouch, kneel, crawl, push, and pull. (Tr. 16). Plaintiff needed to avoid heights. (Tr. 16). The ALJ further found that Plaintiff could maintain concentration/attention for a minimum of two hours at a time and was precluded from performing tasks that demanded attention to details, complicated job tasks/instructions, close supervision, or contact with supervisors or cooperation/contact with the general public. (Tr. 16). Based upon this RFC, the vocational expert testified that Plaintiff could perform the jobs of scaling machine operator, small parts

2

assembler, and burr grinder. (Tr. 20, 340-41).

## Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

## Applicable Law

To be considered disabled and eligible for benefits, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in

3

any substantial gainful activity.[2]  *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id.* If she

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

4

successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id.*; *accord Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## **Analysis**

Plaintiff proffers four issues for this appeal. Pl.'s Brief p. 2. However, the Court finds all of Plaintiff's claims can be sufficiently addressed by considering one issue: whether substantial evidence supports the Commissioner's determination that Plaintiff failed to meet the requirements for Medical Listing 12.05(C).[3]

First, Plaintiff argues that she has shown the requisite significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the

---

[3] For issue four, Plaintiff suggests, *inter alia*, that the ALJ failed to apply 12.05(C) all together because there is no mention of that Listing in his decision. Pl.'s Brief pp. 2, 9-10. However, in light of the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment along with the fact that he considered all the relevant evidence as shown in his decision, any error committed was harmless at best as Plaintiff has failed to show how the result would have been different had the ALJ made an express finding that Plaintiff failed to meet the requirements of Listing 12.05(C).

developmental period (before age 22) to meet the requirement for mental retardation under Listing 12.05. Pl.'s Brief pp. 3-7. Specifically, Plaintiff alleges she only made it through the eighth grade, repeated the fourth grade and was in "in-between classes." Pl.'s Brief p. 3. Plaintiff further argues that the I.Q. scores of record demonstrate that she meets the requisite level of severity for mental retardation under 12.05(C). Plaintiff relies chiefly on the results of a psychological consultative evaluation conducted by Philip Drumheller, Ph.D. on January 3, 2006. (Tr. 270-75). Dr. Drumheller administered I.Q. testing that indicated that Plaintiff had a full scale I.Q. of 61, a verbal scale I.Q. of 65, and a performance I.Q. of 62. (Tr. 274-75).

Listing 12.05, Mental Retardation, states:

[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05 (2006). This is what is commonly referred to as the "capsule definition" for this listing. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). In addition to meeting this capsule definition, a claimant must also meet one of the four severity prongs for mental retardation as listed in the regulations. *Id.* The listing states,[t]he required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

(A) ...
(B) ...
(C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
(D) ...

*See* 20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05(A)-(D) (2006).

The Court finds that the ALJ's opinion does not expressly state whether Plaintiff met the capsule definition for mental retardation under 12.05. Nevertheless, because a claimant must

6

meet both the capsule definition for mental retardation and the requisite level of severity under 12.05(C), Plaintiff's claims fail.

An ALJ may make factual determinations on the validity of I.Q. tests. *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989). At step three of the sequential evaluation process, the ALJ determined that Plaintiff's I.Q. scores were invalid. (Tr. 18). Accordingly, the ALJ implicitly found Plaintiff did not meet the requisite level of severity under 12.05(C). In support of his conclusion, the ALJ pointed out that Plaintiff's work history indicated she had the ability to understand and follow work instructions and tasks. (Tr. 18). Indeed, Plaintiff had reported to Dr. Drumheller that she had worked for twenty years as a factory worker. (Tr. 275). Next, the ALJ noted that Plaintiff had testified that she was in regular classes at school and that her grades were "so-so." (Tr. 18, 324). Finally, the ALJ pointed out that Plaintiff had testified that when she was working, she got along well with coworkers and supervisors and managed her own money. (Tr. 18, 336-37). It was also noted that Plaintiff's former employer noted no problems with her work. (Tr. 18, 336). In addition to the foregoing, the ALJ was also aware of the fact that Dr. Drumheller, himself, determined that Plaintiff was only "mildly" impaired in her ability to perform routine repetitive tasks and that she was only "moderately" impaired in her ability to interact with co-workers and in her ability to receive supervision. (Tr. 17, 275).

Based on the foregoing, substantial evidence in the record supports the ALJ's determination that the results of Plaintiff's I.Q. tests were invalid and that she did not meet the requisite level of severity under 12.05(C). *See Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991) (finding substantial evidence supported ALJ's determination that I.Q. scores were invalid where plaintiff's work experience, among other things, demonstrated he was not mentally retarded).

Alternatively, any error committed by the ALJ in concluding that Plaintiff's I.Q. scores

were invalid and that she, thus, failed to meet the required level of severity under 12.05(C) is harmless because substantial evidence in the record supports the conclusion that Plaintiff failed to meet the capsule definition for mental retardation under Listing 12.05. To qualify for a disability finding under Listing 12.05(C), Plaintiff had to demonstrate an I.Q. between 60 and 70 during her developmental period.

As pointed out by Defendant, the only evidence that Plaintiff exhibited "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" are Plaintiff's own allegations that she completed school only through the eighth grade, repeated the fourth grade and was in "in-between" classes. (Tr. 274, 323-24). However, the ALJ determined that Plaintiff's testimony was not entirely credible (she had also testified that she was in all regular classes in school, that her grades were "so-so" and that she could read and write). (Tr. 17-18, 324).

Moreover, all the reasons pointed out by the ALJ in support of his conclusion that Plaintiff's 2006 I.Q. scores were invalid equally support the conclusion that she did not have the requisite I.Q. during the developmental period. *See Bilka v. Commissioner of Social Security,* 252 F. Supp.2d 472*,* 475-76 (N.D. Ohio July 3, 2002) (finding that claimant's past vocational achievement, among other things, was a legitimate factor to rely on in rejecting low I.Q. scores produced after age 22).

Lastly, the ALJ rejected Dr. Drumheller's opinion that Plaintiff was mentally retarded, even if only "mild[ly]." As pointed out above, Plaintiff had worked successfully for twenty years and Dr. Drumheller himself concluded that she was only mildly impaired in her ability to perform routine repetitive tasks and only moderately impaired in her ability interact with coworkers and receive supervision. (Tr. 275). "'[T]he ALJ is free to reject the opinion of any

physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995) (*quoting Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987)); *see also* 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have ."). Ultimately, because Plaintiff failed to meet her burden of proving that she met the threshold requirement for mental retardation under 12.05(C), her claim fails.

## Conclusion

Based on the foregoing, it is the opinion of the Court that the decision of the Commissioner should be affirmed and that this appeal be dismissed. A final judgment consistent with this opinion will be entered.

**SUBMITTED THIS** 25th day of March, 2008.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**